UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIRK MINER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3382** |
| **ST. TAMMANY PARISH JAIL MEDICAL DEPARTMENT, ET AL.** | **SECTION: "R"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Kirk Miner, a state pretrial detainee, filed this *pro se* federal civil rights action pursuant to 42 U.S.C. § 1983. He sued the St. Tammany Parish Jail Medical Department, Dr. French, Deputy J. Hughes, Sheriff Jack Strain, and the Louisiana Department of Public Safety and Corrections. In this lawsuit, plaintiff claims that the defendants failed to protect him from violence at the hands of another inmate and then denied him adequate medical care for his resulting injuries.

To better understand the factual bases of plaintiff's claims, the Court ordered the St. Tammany Parish Sheriff to produce certified copies of plaintiff's medical records.[1] Those records have been reviewed by the Court and filed into this federal record,[2] and copies were provided to plaintiff for his review and use in these proceedings.

Further, on October 21, 2015, the Court held a Spears hearing. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 10.

Appeals has observed that a <u>Spears</u> hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement.  <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996).  <u>Spears</u> hearing testimony becomes a part of the total filing by the *pro se* applicant.  <u>Id</u>.

At that <u>Spears</u> hearing, plaintiff indicated that he had been placed on the tier which housed the St. Tammany Parish Jail's disciplinary administrative segregation inmates and protective custody inmates.  When he was allowed out of his cell on July 7, 2015, inmate Jonathan Nall was also out of his cell and hiding under the stairway.  Plaintiff testified that Deputy Hughes, the tier guard, neglected his duties and, as a result, did not realize that Nall was not locked in his cell before plaintiff was released.  As a result of Hughes' purported negligence, plaintiff was attacked by Nall and sustained injuries to his face, jaw, and left eye.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[3]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

---

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
>     (i)    is frivolous or malicious;
>     (ii)    fails to state a claim on which relief may be granted; or
>     (iii)    seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[4] and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## II.  Improper Defendants

Before addressing the substance of plaintiff's claims, the Court notes that plaintiff has sued two improper defendants.

First, he has sued the St. Tammany Parish Jail Medical Department. However, a jail medical department is not a distinct, juridical entity capable of being sued. Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008) ("A prison medical department is not an independent entity capable of being sued under 42 U.S.C. § 1983."); accord Jiles v. Orleans Parish Prison Medical Clinic, Civ. Action No. 09-8426, 2010 WL 3584059, at *2 (E.D. La. Sept. 7, 2010) ("A jail's medical department simply is not a juridical entity capable of being sued."); Brewin v. St. Tammany Parish Correctional Center, No. 08-0639, 2009 WL 1491179, at *2 (W.D. La. May 26, 2009) ("[A] 'department' within a prison facility is not a 'person' under § 1983."); Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Oladipupo v. Austin, 104 F. Supp. 2d 626, 641-42 (W.D. La. 2000).

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Second, plaintiff has also sued the Louisiana Department of Public Safety and Corrections. That, too, is improper for the following reasons.

Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (emphasis added).

As an initial matter, it must be noted that the Louisiana Department of Public Safety and Corrections is a state agency and, therefore, is not considered a "person" subject to suit under 42 U.S.C. § 1983. See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hyatt v. Sewell, 197 Fed. App'x 370 (5th Cir. 2006); Cronen v. Texas Dep't of Human Services, 977 F.2d 934, 936 (5th Cir. 1992); Levy v. Office of Legislative Auditor, 362 F. Supp. 2d 729, 735 (M.D. La. 2005); Goins v. State of Louisiana, Civ. Action No. 04-1159, 2004 WL 2694899, at *2 (E.D. La. Nov. 22, 2004); Greer v. Tran, Civ. Action No. 02-3145, 2003 WL 21467558, at *2 (E.D. La. June 23, 2003).

Further, in any event, § 1983 claims against a Louisiana state agency are barred by the Eleventh Amendment. The United States Fifth Circuit Court of Appeals has noted:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).

5

> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); see also Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).

Accordingly, plaintiff's § 1983 claim against the St. Tammany Parish Jail Medical Department and the Louisiana Department of Public Safety and Corrections must be dismissed.

### III. Plaintiff's Claims

### A. Failure-to-Protect Claim

Plaintiff's first claim is that Deputy Hughes failed to protect plaintiff from the attack by inmate Jonathan Nall. Specifically, plaintiff claims that as a result of Hughes' negligence and neglect of his duties, he was unaware that Nall was loose on the tier when plaintiff was released from his cell. As a result, Nall was able to attack plaintiff, causing him serious injury.

It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Therefore, "*[a]ctual* knowledge and appreciation of the risk are required." Smith v. Jaramillo, 394 Fed. App'x 183, 185 (5th Cir. 2010) (emphasis in original). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

Here, plaintiff does not suggest that the attack on him was anything other than a random act of violence. Further, at the Spears hearing, plaintiff testified that he is *not* alleging that Deputy Hughes was *actually aware* that Nall was loose on the tier before releasing plaintiff from his cell. Rather, plaintiff stated that his claim is that Hughes failed to perform his duties properly and acted negligently in releasing plaintiff without first ensuring that Nall was secured in his cell.

Plaintiff's allegations, even if accepted as true, fail to state a nonfrivolous failure-to-protect claim. As an initial matter, even if Hughes failed to perform his duties in accordance with the jail's policies and procedures, that alone is insufficient to support such a claim because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009). Moreover, plaintiff's allegation that Hughes acted negligently fares no better. It is clear that "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely negligent oversight." Brown v. Harris County, Texas, 409 Fed. App'x 728, 731 n.6 (5th Cir. 2010) (internal quotation marks omitted). Simply put: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker v. McCollan, 443 U.S. 137, 146 (1979); accord Withrow v. Gusman,

Civ. Action No. 11-267, 2011 WL 1468355, at *3 (E.D. La. Mar. 24, 2011), adopted, 2011 WL 1468351 (E.D. La. Apr. 18, 2011); Elsensohn v. Jefferson Parish Community Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *3 (E.D. La. Dec. 23, 2009).

Accordingly, while the attack in this case was undeniably unfortunate, the mere fact that it occurred, without more, is not evidence of a constitutional violation. Accordingly, the failure-to-protect claim against Deputy Hughes must be dismissed.

### B.  Medical Claim

Plaintiff's second claim is that he has not been provided with adequate medical care for the injuries he sustained in the attack. For the following reasons, that claim is legally frivolous.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). For the purposes of this decision, the Court will assume that plaintiff's injuries from the attack and the resulting pain associated with those injuries qualify as "serious medical needs."

Nevertheless, plaintiff's claim still fails because those needs were not met with "deliberate indifference." With respect to the "deliberate indifference" required to support a medical claim, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); accord Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here. As noted, the Court ordered the St. Tammany Parish Sheriff to produce certified copies of plaintiff's medical records, and those records were provided to plaintiff and filed into this federal record.[5] The records reflect that plaintiff received continued evaluations and care for a variety of medical conditions while incarcerated at St. Tammany Parish Jail, including but not limited to the injuries he sustained in the attack on July 7,

---

[5] Rec. Doc. 10.

2015, and the continuing pain resulting from those injuries. With respect to those injuries and the pain, the records include the following information: [6]

| | |
|---|---|
| 07/08/2015 | Plaintiff was seen by Dr. Charlane Hardy Liles at the Interim LSU Hospital. He was diagnosed with "facial pain" and a "blow-out fracture." He was prescribed hydrocodone-acetaminophen for pain, Loratadine (an antihistamine), and nasal spray, a follow-up visit was scheduled with the oral surgery clinic for 07/15/2015, and it was recommended that plaintiff be seen in the ophthalmology clinic in one month. |
| 07/11/2015 | Plaintiff submitted a Sick Call Request asking that his pain medication be extended. The nursing notes indicate that he had recently been seen in the medical department and had a follow-up visit scheduled for 08/03/2015. When Dr. R. Demaree Inglese, the jail's Medical Director, reviewed the Sick Call Request, he noted that plaintiff had a long history of "med seeking"; however, Dr. Inglese agreed to move up the scheduled appointment. |
| 07/13/2015 | Plaintiff submitted a Sick Call Request complaining of vision problems and requested pain medication. The nursing notes indicate that he was scheduled to see Dr. French. |
| 07/15/2015 | Plaintiff was seen by Dr. David Burrichter, an offsite dental specialist, who noted that plaintiff had a "left medial orbital wall fracture." Dr. Burrichter recommended an ophthalmology consultation, a follow-up visit in one month, and analgesics as needed. |
| 07/16/2015 | Plaintiff was seen by Dr. French complaining of facial pain. Plaintiff denied any visual changes. Dr. French ordered that plaintiff's offsite specialty appointments be kept and prescribed Ultram (a narcotic-like pain reliever used to treat moderate to severe pain) twice per day for 5 days. |
| 07/26/2015 | Plaintiff submitted a grievance stating: |

> Due to broken bone, (fracture) surrounding my left eye, I have filled out multiple sick calls regarding this incident with no avail, only 12 days of pain

---

[6] Because the records are so voluminous, only a sampling of the records are summarized herein.

                    medication when pain and suffering is severe from this situation, which was never supposed to happen because of (Lack of security surveillance that date) as seen on camera, most recent sick call was submitted 7/25/15.

07/28/2015      Plaintiff submitted a Sick Call Request complaining of vision problems and pain. The nursing notes state that he was scheduled to see Dr. French the following day.

07/29/2015      Plaintiff was seen by Dr. French complaining of blurry vision. Plaintiff stated that his symptoms were improving but were "still there." He requested more Ultram and, if that was not possible, an increase in his Neurontin (a drug used to treat seizures and nerve pain). The doctor noted that he did not see the need for additional pain medication; that plaintiff's condition was improving gradually; and that he had appropriate follow-up care scheduled.

07/30/2015      Dr. Inglese responded to plaintiff's grievance of 07/26/2015, stating:

> I am responding to both a Grievance and a written complaint you filled out regarding this issue. In your Grievance, you complained that you have not been seen for the injuries you sustained on the evening of 7/07/15. This is not true. You were seen by our health staff immediately after the altercation, and you were subsequently sent to an emergency department for care. When you returned on 7/09, we ordered the necessary medications as advised by the specialists you saw. Then, you were seen by a doctor for follow up on 7/16 and again yesterday (7/29/15). During that visit, Dr. French explained that you [sic] follow-up appointments have been requested with both oral surgery and with ophthalmology. You should understand that we do NOT chose [sic] the dates of those follow-up appointment [sic]. The doctor at the hospital choses [sic] the clinic dates.

> Dr. Inglese also placed the following note into plaintiff's medical record:

11

>I called Mr. Miner to clinic to personally review his Grievance and 2 separate complaints. Dr. French just saw Mr. Miner yesterday & explained his follow-up care and his choice of analgesia. Pt is now 23 days from his injury. Pt is requesting ↑ Neurontin today. Neurontin is not an analgesis; it is prescr. for <u>selected</u> types of neuropathic pain/dysesthesia. It is <u>not</u> prescribed for fractures. At 3 wks, prescription-strength Naprosyn <u>&</u> Tylenol should be sufficient.
>
>Plan –
>↑ Analgesia by
>↑ Napr. 375 mg → 500 mg
>Add Tylenol III tid
>Keep sched. F/U & off-site specialty apts.

07/31/2015    Plaintiff submitted a Medical Request stating:

>Yesterday I explained to Dr. Inglese that the medical nurse I seen on the night of 7/7/2015, came to the conclusion that nothing was wrong with my left eye and I was sent back to the dorm with no medication to my avail, for the one fight I had, that I have documentation of (copy), which Dr. Inglese stated and wrote down that there were 2 (fights) that occurred that night which didn't happen. From the lack of security that night a (PC) inmate one Jonathan Nall, this wouldn't have happened.

That same day, Dr. Inglese responded:

>I met with you yesterday and addressed this situation. I will not discuss it further. I do NOT say there was nothing wrong with you [sic] eye. I said that you were seeing two specialists and that there is a plan in place to treat your injuries. I said that it is TOO SOON to conclude that you will have "longstanding problems" from your injury as you alleged in your complaint. I will not discuss the fights with you. This is between you and Jail Administration. I will not address this situation again. I've now addressed three complaints and one Grievance about this matter. You are receiving appropriate care and have follow-up specialty care established.

| | |
|---|---|
| 08/04/2015 | Dr. Inglese placed the following note in plaintiff's medical records: |

> Recently, there has been significant abuse of Ultram and Neurontin in the jail. Inmates are selling, snorting, or taking pills en masse in an attempt to "get high". The Medical Department has responded by conducting surprise shakedowns of inmates on these drugs in order to identify individuals who are abusing their medications. This morning, Mr. Minor [sic] was searched because of his Neurontin prescription. He was given medications in med pass just yesterday and should have had 5 pills in his possession. He was missing 2 pills less than a day after receiving them. The inmates have been repeatedly warned that failure to take non-life-essential medication as prescribed will result in the meds being discontinued. Therefore, Mr. Minor's [sic] Neurontin is being discontinued today.
>
> This is not a life-essential medication. The Neurontin was started by Dr. Gore on 6/16/15 as a TEMPORARY treatment for Mr. Miner's leg pain. As written on the 6/16 *Physician's Orders*, the Neurontin was started at 300 mg three times daily and was to be gradually reduced and tapered off over 6 months. The Neurontin was never intended to be a permanent medication. Because of Mr. Minor's [sic] failure to take his med as ordered, I am stopping it now. I have discussed the matter with Dr. Gore, the prescribing physician, and he agrees with this decision.
>
> I wish to be entirely clear regarding my decision to discontinue Mr. Miner's Neurontin. This is NOT indifference in any way to his medical needs. A physician prescribes medication after carefully weighing the risks of therapy (side effects, allergic potential, drug interactions, abuse potential, etc.) against the potential benefits. In my opinion, the benefits of continued administration do not outweigh the risks to Mr. Miner or to other inmates who may illicitly receive his medications. I also believe my

13

>> decision is [sic] clearly meets prevailing standards of practice for a prudent healthcare practitioner. My decision is aimed at preserving and protecting Mr. Miner's health and the health of other inmates in the jail. Moreover, as mentioned, I have reviewed this case with Dr. Samuel Gore, another Louisiana-licensed physician working at the jail. He fully agrees with this decision. In the future, you Mr. Miner will only be prescribed medications when there is solid, objective evidence supporting their use and only when the benefit of said medications outweighs any potential risk(s).

> Dr. Inglese added a handwritten notation stating: "I met w/ Mr. Miner today & explained the above."

08/05/2015   Plaintiff submitted a grievance complaining that he was being denied Neurontin as a form of retaliation. The following day, Dr. Inglese responded:

>> Once more, I will not address the Neurontin situation again. It was never intended to be a permanent medication. Your physicians prescribed it for a limited period of time. However, your documented abuse of the drug forced me to discontinue it early. I will not explain myself again. I have explained my reasoning to you on many, many occasions. This is not retaliation, you were caught abusing your pills. I will not address the situation again.

08/12/2015   Plaintiff submitted a Sick Call Request stating that he was experiencing pain, vision problems, and headaches. When examined by the nurse, plaintiff stated that he was scheduled to see a specialist for his eye problem the following month, but that he was requesting that the jail doctor give Neurontin in the interim for the pain.

08/17/2015   Plaintiff was seen by Dr. Yanelis Perez, an offsite dental specialist. Dr. Perez stated: "Kirk Miner is a 32 y.o. male who is doing well and healing as expected. Medial wall fracture will not be treated since it can heal by itself." It was recommended that plaintiff be given ibuprofen for pain and return for a follow-up visit in four weeks.

| | |
|---|---|
| 08/17/2015 | Plaintiff submitted a Sick Call Request stating that he had been to the hospital that day and was prescribed pain medication. However, he complained that he had not received the medication. The nurse's notes indicate that plaintiff was in no apparent distress and that there were no orders in the chart for new medications. |
| 08/20/2015 | Plaintiff was seen by Dr. Clayton Stevens, an offsite specialist, concerning the eye injury. Dr. Stevens recommended that plaintiff be given ibuprofen for pain and return for a follow-up visit in six months. |
| 09/14/2015 | Plaintiff was seen my Dr. Brian Rowan, an offsite dental specialist, who noted: "Kirk Miner is a 32 y.o. male who is complaining of lingering pain after a medial orbital wall fracture. Pt is not a surgical candidate as surgery is unlikely to improve patient symptoms." Dr. Rowan recommended that plaintiff be given ibuprofen and be seen in the pain clinic or by a neurologist. In reviewing those notes, Dr. Inglese noted that plaintiff was scheduled for a follow-up with Dr. French on 10/02/15, and Dr. French could decide if a neurology referral was indicated. Dr. Inglese also noted that the pain clinic would not see any inmates. |

In light of the foregoing, it is evident that plaintiff's medical complaints have not been ignored. On the contrary, he has repeatedly been examined and treated both at the jail and by outside specialists. Although he disagrees with the adequacy of that medical treatment, it is clear that, absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, plaintiff's primary complaint is that the jail doctors refused to give him the specific pain medications he preferred. However, "an inmate has no right to be prescribed a particular medication for pain." Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *4 (E.D. La. Dec. 15, 2014); accord Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994)

15

(a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation); Jacobs v. McVea, Civ. Action No. 14-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014). This is true even if the pain medication administered at the jail was not as effective as an alternative plaintiff would have preferred, because the fact that an inmate's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); Billizone, 2014 WL 7139636, at *4. In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

Further, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion is not changed by the fact that plaintiff's medical problems have not been cured. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment has been unsuccessful or because pain persists despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, his medical claim is legally frivolous.

### C. Supervisory Claim

Lastly, plaintiff has sued Sheriff Strain, the "head sheriff," for "not running a D.O.C. facility properly."[7] Although Sheriff Strain is the supervisory official ultimately responsible for

---

[7] Rec. Doc. 6, p. 8.

running the jail,[8] it is clear that he cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of strict liability[9] or vicarious liability.[10]

It is, of course, true that a supervisory official can be held liable in his individual capacity for his actions in failing to properly supervise or train his subordinates. However, if that is what plaintiff is attempting to allege, any such claim necessarily fails in light of the foregoing findings that there was no underlying constitutional violation in this case. See, e.g., Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."), cert. denied, 134 S.Ct. 1935 (2014); Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014); Wallack v. Jackson County, Mississippi, Civil Action No. 1:13cv103, 2014 WL 2154202, at *8 (S.D. Miss. May 22, 2014); Kennedy v. City of Shreveport, Civ. Action No. 07-1049, 2008 WL 2437043, at *6 (W.D. La. June 13, 2008).

Similarly, if plaintiff is attempting to assert an official-capacity claim against Sheriff Strain, that claim likewise fails. Again, because there has been no underlying constitutional violation, any official-capacity claim is meritless. See, e.g., Royal v. Spragins, 575 Fed. App'x 300, 305 (5th Cir. 2014); Billizone, 2014 WL 7139636, at *5.

---

[8] "Each sheriff shall be keeper of the public jail of his parish ...." La. Rev. Stat. Ann. §§ 13:5539(C) and 15:704.
[9] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).
[10] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of November, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**